HAZOURI, J.
Rushton Skakel, Sr. appeals from a final order compelling him to appear and testify before a grand jury in Connecticut pursuant to section 942.02, Florida Statutes (1997). Chapter 942 is entitled “Uniform Law to Secure the Attendance of Witnesses from Within or Without a State in Criminal Proceedings.” We affirm.
Connecticut state attorney, Jonathan Benedict, submitted an application to the superior court in Connecticut to summon Rushton Skakel, Sr. to testify in a grand jury investigation of the homicide of Martha Moxley. The facts as alleged therein are:
Early on October 31, 1975, Dorothy Moxley of Walsh Lane in the Belle Haven area of Greenwich, Connecticut reported her fifteen-year-old daughter, Martha Moxley, missing. Martha was last seen at home on the afternoon of October 30, and had been expected to return home that evening.
The body of Martha Moxley was subsequently discovered on the Moxley property on the afternoon of October 31, 1975. In the ensuing crime scene investigation, a Toney Penna # 6 iron golf club was found broken into pieces and covered with blood on the aforesaid Moxley property.
The Chief Medical Examiner for the State of Connecticut performed an autopsy of Martha’s body and reported that she suffered multiple lacerations of the scalp with fractures of the skull and contusions and lacerations of the brain causing her death.
The medical examiner also revealed that the weapon used to inflict the injuries and cause the death of Martha Mox-ley was the Toney Penna # 6 iron golf club. The medical examiner classified the death as a homicide.
On October 31, 1975, Greenwich detectives, while investigating the Martha Moxley homicide, observed a Toney Penna # 4 iron golf club in the residence of Rushton Skakel, Sr. At the time, Mr. Skakel resided at 71 Otter Rock Drive in the Belle Haven area of Greenwich, Connecticut, which was near the scene of the Moxley homicide.
On November 1, 1975, Mr. Skakel identified the Toney Penna # 4 iron golf club, observed in the Skakel residence, as being part of a set of Toney Penna Gold Clubs owned by his deceased wife. Mr. Skakel permitted Greenwich detectives to take possession of the Toney Penna # 4 golf club.
Upon information and belief, the testimony of Rushton Skakel, Sr. is material and necessary to the present grand jury investigation.
On August 17, 1998, the Connecticut superior court issued the certificate requesting Skakel’s attendance.
On September 18, 1998, state attorney Benedict executed an affidavit which stated:
1. On November 1, 1975 Rushton Skakel Sr. identified the Toney Penna #4 iron golf club described in the undersigned’s Application dated August 13, 1998 as having been one of a set formerly owned by his deceased wife which had been given to his daughter, Julie, who then resided at 71 Otter Rock Road.
2. On May 17, 1976 James E. McDonald, a firearms and toolmark examiner and head of the New Haven Connecticut Police Crime Laboratory microscopically compared the Toney Penna No. 4 and 6 irons. In doing so *470 he detected matching green pigmented acrylic residue within the grooves and lettering of both golf clubs. He also noted identical striae marks caused by the same tool on the groove face of each club. On that basis McDonald rendered the opinion that the two clubs were of the same set.
3. A canvas by the Greenwich Police Department of the Bell Haven neighborhood, a gated community, turned up no other sets of Toney Penna golf clubs.
On October 15, 1998, Frank Garr, an inspector for the judicial district of Fair-field at Bridgeport, Connecticut, filed an affidavit indicating that Skakel was privy to and a source of information that would assist in the investigation to-wit: on one occasion Skakel attended a meeting at the school of his son, Michael, and it was reported during that meeting Michael made certain admissions regarding his involvement in the murder. The affidavit went on to state that a Mildred lx, Skakel’s former neighbor, indicated that on at least one occasion Skakel had discussed his concerns about members of his family’s possible involvement in the murder. Skakel currently resides in Martin County, Florida.
Pursuant to section 942.02, a hearing was set before the trial judge to determine whether the witness could provide information that was material and necessary to the grand jury investigation and whether or not it would cause undue hardship to require the witness to travel to Connecticut to attend and testify before the grand jury.[1] Based on the certificate from the superior court of Connecticut and the attached affidavits plus the evidence presented during the hearing, the trial court entered an order requiring Skakel to appear before the grand jury in Connecticut.
Skakel raises two points on appeal that merit discussion. First, that the trial court erred in concluding that the evidence as a whole supports the conclusion that Skakel was competent to testify and, therefore, would not be caused any undue hardship by being compelled to attend and testify before the grand jury in Connecticut. Second, that the trial court erred in determining that materiality and necessity were sufficiently shown by the application in the certificate to compel Skakel’s attendance in Connecticut. The standard of review is whether or not the trial court abused its discretion. See Epstein v. People of State of N.Y., 157 So.2d 705 (Fla. 3d DCA 1963).
As to the first point, we find there was conflicting testimony as to Skakel’s competency to testify. The trial judge as the trier of fact resolved the conflicts and did not abuse his discretion in determining that Skakel was competent and would suffer no undue hardship to travel to Connecticut. It should be noted that Skakel attended the hearing which lasted more than four hours but did not testify. There was no record evidence that his attendance at this hearing caused him any undue hardship and his counsel did not call him to the witness stand to demonstrate his lack of competency.
As to the second point, Skakel 'challenges the sufficiency of the certificate because it alleges ultimate rather than evi-dentiary facts. As stated in Epstein:
*471 Since the certificate is in the words of the statute, we think that it is sufficient. It is usual for certificates of this type to follow the statute; [citations omitted] and inasmuch as the certificate is issued by a judge of the requesting state who has satisfied himself as to the sufficiency of the evidence or facts to establish the necessary conditions for the making of the certificate, it is not required that he give the basis of his decision in the order to have a certificate that is prima facie good.
Id. at 707.
As in our case, the Third District Court of Appeal noted that the certificate had appended to it an affidavit of an assistant district attorney which set out in great detail the reasons why the witness should be required to appear before a grand jury in New York state. In this case not only do we have an affidavit from the state’s attorney, we also have a detailed affidavit from an inspector of the judicial district.
Skakel presented no testimony on the issue of the materiality and necessity of his testimony before the Connecticut grand jury. He relies upon this court’s decision in Delit v. State, 583 So.2d 1083 (Fla. 4th DCA 1991), for the proposition that the certificate and affidavits are not sufficient because they are based entirely on hearsay. Skakel’s reliance on Delit is not well founded. The Delit court did not hold that the foreign state authorities did not prove that the witness would provide testimony which would be material and necessary to the grand jury proceedings because the certificate and affidavits were based on hearsay. The holding in Delit is that the certificate and affidavits only indicated that the witness might know the whereabouts of the suspect but not that the witness had any material information concerning the crime itself. Unlike in Delit the certification and the affidavits indicate that Skakel may have direct knowledge as to the instrumentality of the crime and the identity of the perpetrator.
We affirm the trial court’s order requiring Skakel to appear before the grand jury in Connecticut.
GUNTHER and GROSS JJ., concur.

. If at a hearing the judge determines that the witness is material and necessary, that it will not cause undue hardship to the witness to be compelled to attend and testify in the prosecution or a grand jury investigation in the other state, and that the laws of the state in which the prosecution is pending, or grand jury investigation has commenced or is about to commence, will give to the witness protection from arrest and the service of civil and criminal process, the judge shall issue a summons, with a copy of the certificate attached, directing the witness to attend and testify in the court where the prosecution is pending, or where a grand jury investigation has commenced or is about to commence at a time and place specified in the summons. In any such hearing the certificate shall be prima facie evidence of all the facts stated therein. § 942.02(2), Fla. Slat. (1997).